JjDECUIR, Judge.
Te-Mamou Water District filed suit on open account against Pelts & Skins Export, Ltd. for money due from the sale of water. Pelts & Skins reconvened, alleging damages incurred from the use of water contaminated with sand and sold by the Water District; the reconventional demand was styled as a breach of contract action. The Water District filed an exception of prescription to the reconventional demand, arguing that the demand for damages was a tort claim subject to liberative prescription of one year and the provisions of La.Code Civ.P. art. 1067. The trial judge agreed with the argument put forth by the Water District and dismissed the reconventional demand.
The record reveals that in August of 1989, an entity called Plaquimines Alligator Farms, Inc. contracted with Te-Mam-ou Water District for the purchase of water. A copy of the written contract evidencing this transaction is contained in the record. Plaquimines Alligator Farms, Inc. is alleged to be the corporate predecessor of Pelts & Skins Export, Ltd.; while there is no proof of this relationship in the record, it is not seriously disputed by the Water District.
The defendant’s reconventional demand asserts that at some time in 1997, while providing water to Pelts & Skins, the Water District delivered water contaminated with sand.[1] The contaminated water allegedly caused extensive damage to Pelts & Skins’ equipment and forced the company to dig its own water well on its property. Also in 1997, according to the Water District’s petition, Pelts & Skins 12failed to pay its water bill. The Water District has not alleged the particular dates of its unpaid bill or bills, nor does the petition state how many invoices are delinquent or the quantity of water for which payment has not been made.
The two questions before this court are the proper characterization of Pelts & Skins’ reconventional demand and whether *779 that demand is barred by prescription. It is clear that a contractual relationship existed between the Water District and Pelts & Skins. The Water District provided water on an ongoing basis, billed Pelts & Skins, and was paid periodically. That relationship is the basis for the suit on open account brought by the Water District. It is not clear, however, that the claims asserted in the reconventional demand are similarly based on the implied contract between the parties.
Pelts & Skins allegedly sustained damages from the delivery and use of contaminated, unusable water. In other words, the water purchased by Pelts & Skins was arguably defective. La.Civ.Code art. 2520 describes a redhibitory defect as one which “renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.” The record does not include any specific allegations about the contaminated water, such as how it came to be contaminated, if the contamination was ongoing, whether the Water District knew of the contamination, and so forth. However, the record does indicate that the Water District was informed of the problems Pelts & Skins had with the contaminated water.
Louisiana jurisprudence has long held that in a suit for the price of a thing sold, redhibition may be urged as a defense, even though the action for redhibition would be otherwise barred by the prescription of one year. Rapides Grocery Co. v. Clopton, 171 La. 632, 131 So. 734 (1930). In J.B. Beaird Co. v. Burris Bros., 216 La. 655, 44 |aSo.2d 693 (1949), the supreme court distinguished between a defendant who uses a demand for reduction in price as a weapon of attack and one who uses the same demand as a shield or defense in resisting the payment of the balance of the purchase price; ■ the latter is not precluded by a plea of prescription. In more recent jurisprudence, the supreme court made the following comments in a per curiam decision:
Prieur’s reconventional demand was based on the defectiveness of the concrete. His claim was prescribed by the one-year prescriptive period. Prieur’s reconventional demand was not filed within 90 days of service of the main demand under La.Code Civ.P. art. 1067. However, La.Code Civ.P. art. 424 allows a prescribed obligation to be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff. Plaintiffs (Dixie’s) claim is for payment for the concrete which Prieur in his reconventional demand claims was defective. Thus, Prieur’s claim is incidental to plaintiffs demand and may be used as a defense.
Accordingly, we reverse the judgment of the court of appeal, 579 So.2d 999 (1991), and remand the case to that court to determine whether Prieur’s prescribed claim can be used as an offset to the obligation plaintiff seeks to enforce.
Dixie Bldg. Materials Co. v. Bob L. Whittington & Assocs., Inc., 588 So.2d 78 (La. 1991).
Similarly, in the instant case, Pelts & Skins’ reconventional demand is based on the defectiveness of the water supplied by the Water District. Although there is unquestionably a contractual relationship between the Water District and Pelts & Skins, we believe the cause of action asserted in the reconventional demand is more properly styled as a claim of redhibition. Such a claim of redhibition may be asserted as a defense as it is incidental to the obligation sought to be enforced by the Water District. Accordingly, we must remand this matter to the district court for trial on the merits.
| ¿For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded for further proceedings not inconsistent with this opinion. Costs of this proceeding in the amount of $914.50 are assessed to the Te-Mamou Water District.
REVERSED AND REMANDED.

. There is no evidence in the record of the date of the contaminated water delivery. At various times in these proceedings, the attorneys have referred to the date as July of 1997 and July of 1998. The transcript of the hearing on the exception of prescription indicates that Pelts & Skins' reconventional demand contains a typographical error in stating that the event occurred in 1998. The trial judge then stated that the pleadings will be considered amended to reflect 1997 as the correct date.